[No. A069963. First Dist., Div. Four. June 28, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
RODNEY J. BARTOW, Defendant and Appellant.

**COUNSEL**

Kenneth L. Jesmore for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald S. Matthias and David D. Salmon, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ANDERSON, P. J.**—Rodney J. Bartow (appellant) was found guilty by jury of the following offenses: (1) driving under the influence of alcohol causing injury (Veh. Code, § 23153, subd. (a)); (2) driving under the influence of an alcoholic beverage with a blood-alcohol level of .08 percent or above (Veh. Code, § 23152, subd. (b)); and (3) hit-and-run driving, a misdemeanor (Veh. Code, § 20002, subd. (a)). In the second phase of a bifurcated trial the jury also found the following prior convictions true: (1) reckless driving involving alcohol (Veh. Code, § 23103.5); and (2) willful discharge of a firearm with gross negligence in which the appellant personally used a firearm in the commission of that offense (Pen. Code,[1] § 246.3). The latter section 246.3 allegation was also found by the court to be a prior "serious felony" conviction within the meaning of sections 667 and 1192.7, subdivision (c)(8).

Appellant was sentenced to state prison for four years as follows: two years for the first driving under the influence conviction, doubled to four years pursuant to section 667, subdivision (e)(1), six months for the hit-and-run driving conviction, to be served concurrently, and an additional two years for the other driving under the influence violation, which was stayed.

## I. FACTS AND PROCEDURAL BACKGROUND

### A. *The Present Conviction*

Appellant, driving with a blood-alcohol level of 0.19 percent, backed into a car in a parking lot. He left hurriedly, causing two bystanders to jump aside to avoid being hit. Appellant accelerated down the street, attempted to turn a corner at more than 50 miles per hour, lost control and spun broadside into a truck, knocking it into a building. His passenger, his wife, was injured.

### B. *The Prior Conviction*

The prosecution alleged that appellant's conduct in violating section 246.3 included the "personal use" of a firearm, even though the definition of that

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

offense does not explicitly contain a "personal use" element. Appellant claimed, on the other hand, that neither the language of his plea nor the actual facts of commission of the offense support a finding of personal use of a firearm. He was originally tried by jury for this offense after having been held to answer following a preliminary hearing. At that trial his companion apparently testified that it was she who fired the gun; that jury deadlocked and a mistrial was declared. Appellant had been in custody for almost one year when the mistrial occurred, and he then decided to plead nolo contendere to the charge.

The court herein initially informed the jury that the second phase of the trial required the same jury to "determine . . . the enhancement phase, as it is, of the allegations and in the information . . . by the evidence provided, the arguments made and the matter [will be] submitted to you."

Following a recess the court reconvened outside the presence of the jury and, without explanation, announced that "the matter would proceed on paper." The court then discussed how one proves "personal use of a firearm" within the meaning of section 1192.7, subdivision (c)(8). After citing *People v. Guerrero* (1988) 44 Cal.3d 343 [243 Cal.Rptr. 688, 748 P.2d 1150], *People v. Piper* (1986) 42 Cal.3d 471 [229 Cal.Rptr. 125, 722 P.2d 899], and *People v. Gomez* (1994) 24 Cal.App.4th 22 [29 Cal.Rptr.2d 94], the court determined "that there would be a limitation on the presentation of evidence to the record and that would be expended [*sic*] by *Gomez* . . . from *Gu[errero]* to include the preliminary hearing transcript."

At this juncture the court ruminated that although witnesses for both sides were ready to testify concerning "personal use" of the firearm, it would create "a trial within a trial and a relitigation of what was had some years back." The court believed that under *Guerrero* and *Gomez*, "these matters proceed on paper as it is with findings that had been made." Yet, the court also realized that no findings on "personal use" had been made and that only one person, Officer Zanotti, had given testimony at the preliminary hearing. Both counsel appear to have acquiesced in the court's decision to forego the calling of live witnesses.

The only evidence allowed of the act constituting the alleged prior "serious felony" conviction was the preliminary hearing transcript of the testimony of Officer Zanotti, the arresting officer. According to Officer Zanotti, he responded to the report of an armed man inside a residence who refused to leave. As he approached the area, Officer Zanotti heard a gunshot come from the vicinity of appellant and a woman standing on a sidewalk behind a car. Zanotti saw appellant jump to his left, look down at his right hand and

saw smoke coming from the area near his hand. Officer Zanotti ordered the couple down to the ground and to display their hands. Appellant reached behind his back and tossed a handgun about 15 feet away. Officer Zanotti testified that he did not see a gun when he heard the discharge.

### C. *Allegations on Appeal*

Appellant challenges only the jury finding that his prior conviction for willful discharge of a firearm with gross negligence involved personal use of a firearm and, therefore, was a "serious felony" under sections 667, subdivision (d)(1) and 1192.7, subdivision (c)(8). He contends specifically that the court erred in (1) allowing the prosecution to introduce the transcript of the preliminary hearing, (2) refusing to allow the defense to introduce the probation report, and (3) refusing to allow the defense to introduce portions of the transcript of the jury mistrial which preceded appellant's plea of nolo contendere. He also contends that his prior conviction cannot serve as a serious felony enhancement because personal use of a firearm is an element thereof. We conclude that the trial court erred in precluding appellant from introducing certain evidence to contradict the prosecution's evidence that he personally used a firearm in the commission of the prior offense. This error requires reversal of the corresponding sentencing enhancement.

### II. DISCUSSION

### A. *The Court Did Not Err in Admitting Portions of the Preliminary Hearing Transcript*

■ Appellant's argument that the court erred in admitting the transcript of the preliminary hearing to prove the "serious felony" nature of the prior conviction was recently decided against him by a unanimous Supreme Court in *People v. Reed* (1996) 13 Cal.4th 217 [9 Cal.Rptr.2d 106, 914 P.2d 184]. Therein, the court first held that the preliminary hearing transcript excerpts were within "the record of the prior conviction, as required for their admission under *People v. Guerrero, supra*, 44 Cal.3d at page 355." (*Id.*, at p. 223.) Recognizing that the transcript was hearsay, it found an exception for its admissibility as former testimony of an unavailable witness. (Evid. Code, § 1291, subd. (a).) The court reasoned that the witnesses at the preliminary hearing were "*legally* unavailable because, under the rule announced in *People v. Guerrero, supra*, 44 Cal. 3d 343, the prosecution was precluded from presenting any evidence *outside the record of conviction* to prove the circumstances of the prior crime." (13 Cal.4th at p. 225, original italics.) Calling those witnesses would necessarily be "outside the record."

### B. *The Court Erred in Refusing to Admit Portions of the Transcript of the Jury Trial*

■ Apparently acquiescing in the correctness of the court's determination to proceed "on paper," appellant vigorously argues on appeal, as he did below, that he was denied fundamental due process when the court refused to allow him to introduce portions of the *trial* transcript—in particular, the testimony of his companion that "in fact the gun was hers or that she had fired the gun." The court's stated reason for denying admission of this prior testimony was that the jury "hung for whatever reason."

*Reed* teaches us that the threshold admissibility question is whether the item is within the "entire record of conviction" as required under *People* v. *Guerrero*. (*People* v. *Reed, supra,* 13 Cal.4th at p. 223.) If it is, the court must then determine whether an exception to the hearsay rule authorizes its admission. Appellant urges us to find that the testimony was "an admission against her penal interest." We assume appellant refers to Evidence Code section 1230, which makes a hearsay statement admissible "if the declarant is unavailable as a witness and the statement, when made, was so far contrary to the declarant's pecuniary or proprietary interest . . . that a reasonable man in his position would not have made the statement unless he believed it to be true." (Evid. Code, § 1230.)

#### (1) *A Transcript of Testimony Given in a Trial Which Resulted in a Mistrial Prior to Conviction Is Part of the Record of the Prior Conviction*

In *Reed* our Supreme Court concluded that the transcript of the preliminary hearing was part of the record of the prior conviction whether that term is used technically, as "equivalent to the record on appeal," or more narrowly "as referring only to those record documents reliably reflecting the facts of the offense for which the defendant was convicted." (*People* v. *Reed, supra,* 13 Cal.4th at p. 223.) The court in *Reed* held that the preliminary hearing transcript even fell within the narrower definition "because the procedural protections afforded the defendant during a preliminary hearing tend to ensure the reliability of such evidence." (*Ibid.*) It cited those protections as including: ". . . the right to confront and cross-examine witnesses and the requirement those witnesses testify under oath, coupled with the accuracy afforded by the court reporter's verbatim reporting of the proceedings." (*Ibid.*)

Each of these protections appertains with equal or greater force to the trial itself. We note that preliminary hearings now permit more relaxed standards for admission of hearsay evidence than do actual trials. Therefore, even

more protections are afforded a defendant at the actual trial before a superior court judge and jury than are afforded by a preliminary hearing before a magistrate. If the preliminary hearing transcript is "part of the record of the prior conviction" then, a fortiori, the actual trial which followed it is also part of that record. The jury's failure to reach unanimous agreement does not diminish any of those protections relied upon by *Reed* to qualify the transcript as part of "the entire record of conviction." (*People* v. *Guerrero, supra,* 44 Cal.3d at p. 345.)

### (2) *The Transcript of Testimony Given at a Trial Before Conviction Is Admissible in a Subsequent Trial to Determine Whether That Conviction Qualifies as an Enhancement*

The female companion's testimony will satisfy either the admission against penal interest exception to the hearsay rule or the former testimony exception *if* the declarant was legally unavailable as a witness.[2] The *Reed* court specifically found the witnesses legally unavailable because *Guerrero* "precluded the *prosecution* from calling live witnesses to the criminal acts in the prior case." (*People* v. *Reed, supra,* 13 Cal.4th at p. 226, italics added.) However, it explicitly declined to decide whether *Guerrero* precluded *the defense* from calling live witnesses: "We express no opinion as to whether a defendant would be entitled to call live witnesses to dispute circumstances of the prior offense. [W]e hold only that since the *prosecution* is not permitted to present live testimony outside the record of conviction, it is allowed, under Evidence Code section 1291, to present the prior testimony of witnesses whom the defendant has already had an opportunity and incentive to cross-examine." (*Id.,* at p. 229, original italics.) The answer to that question, left undecided by *Reed* and *Guerrero,* must now be determined.

*Guerrero* was chiefly concerned with the extent of the prior record, and it upheld the trial court's review of the accusatory pleadings to determine whether the convictions were actually burglaries of a residence. At the time of trial a burglary of a residence was a "serious felony," but at the time of commission of the prior offenses the residential character of the building was not an element of the crime. However, the records of the prior convictions included accusatory pleadings charging the defendant with residential burglaries. Thus, his plea of nolo contendere necessarily established the truth of the present allegations that the prior convictions were actually burglaries of residences.

In determining that the trial court could look beyond the elements of the crime as they existed at the time the plea was entered to review the

---

[2]Both exceptions, Evidence Code section 1230 (declaration against interest) and section 1291 (former testimony) require that the witness be unavailable.

accusatory pleading itself, the *Guerrero* court overruled its earlier decision in *People* v. *Alfaro* (1986) 42 Cal.3d 627 [230 Cal.Rptr. 129, 724 P.2d 1154]. *Alfaro* held that proof of the substance of the prior conviction is limited to matters necessarily established by the prior judgment of conviction. (*Id.*, at pp. 629, 636.) In *Guerrero* the court concluded that the cases upon which *Alfaro* ultimately rested actually stood for the opposite proposition cited therein: that "in determining the truth of a prior-conviction allegation, the trier of fact may look to the entire record of the conviction." (*People* v. *Guerrero, supra,* 44 Cal.3d at p. 355.) In pronouncing this rule the *Guerrero* court had this to say: "Such a rule is both fair and reasonable. To allow the trier of fact to look to the entire record of the conviction is certainly reasonable: it promotes the efficient administration of justice and, specifically, furthers the evident intent of the people in establishing an enhancement for 'burglary of a residence'—a term that refers to *conduct*, not a specific *crime*. To allow the trier to look to the record of the conviction— *but no further*—is also fair: it effectively bars the prosecution from relitigating the circumstances of a crime committed years ago and thereby threatening the defendant with harm akin to double jeopardy and denial of speedy trial." (*Ibid.*, original italics.)

By emphasizing that the trial court could go "*no further*" than the record, *Guerrero* forecloses the calling of live witnesses—by either prosecution or defense. The court did not limit this condition to the prosecution, although it did justify the reasonableness of the rule by stressing its consequent protections for the defendant. We see no rational basis for adopting a different rule for the defendant, especially where to do so here would actually result in less protection for the accused.

Our conclusion finds additional support in the authority upon which Guerrero rests. The *Guerrero* prohibition of going "*no further*" than the record in litigating the circumstances of the commission of the prior conviction derives from prior Supreme Court cases whose limitation of the record it actually was expanding. *Guerrero* specifically overruled *People* v. *Alfaro,* which limited proof that a prior conviction was a "serious felony" to matters necessarily established by the prior judgment of conviction. (Plea of guilty to information charging burglary of a residence admits only elements of burglary, and is not competent proof of his commission of the serious felony of "burglary of a residence.") In doing so *Guerrero* criticized *Alfaro* as misinterpreting a line of cases culminating in *In re Finley* (1968) 68 Cal.2d 389 [66 Cal.Rptr. 733, 438 P.2d 381]. The *Finley* court held that the defendant's 1932 Washington conviction for second degree burglary did not support a determination of habitual criminality because the Washington conviction could have been based on acts not constituting a California burglary. In

concluding that the *Alfaro* court was mistaken in its reliance upon *Finley*, *Guerrero* opined as follows: ". . . the *Finley* court plainly recognized and applied the rule laid down in [*In re*] *McVickers* [(1946) 29 Cal.2d 264 (176 P.2d 40)] and followed in [*In re*] *Seeley* [(1946) 29 Cal.2d 294 (176 P.2d 24)], i.e., the court may look to the entire record of the conviction to determine the substance of the prior foreign conviction; but when the record does not disclose any of the facts of the offense actually committed, the court will presume that the prior conviction was for the least offense punishable under the foreign law." (*People* v. *Guerrero, supra,* 44 Cal.3d at pp. 354-355.)

*Guerrero*'s reliance on *Finley* in overruling *Alfaro* supports the proposition that *Guerrero*'s limitation (in determining whether a prior conviction qualifies as an enhancement) to the "entire record of conviction *and no further*" means that neither the prosecution nor the defense may call live witnesses. In *Finley* Chief Justice Traynor explained that the determination of whether a foreign conviction qualified for increased punishment under the then habitual criminal law did not involve "the opening or reopening of questions calling for resolution on the basis of the testimony of witnesses who may have died or disappeared or where memories have faded. . . . The fact that an accused suffered a foreign conviction of a crime is made officially of record at the time and place of such conviction, and the law of the jurisdiction where he suffered it is judicially noticed. [Citations.] The least adjudicated elements of the prior conviction remain the same whether it is questioned in the trial court at the time of the determination of habitual criminality or on habeas corpus after such determination has become final. *Neither the People nor the defendant can go behind those adjudicated elements in an attempt to show that he committed a greater, lesser, or different offense."* (*In re Finley, supra,* 68 Cal.2d at pp. 392-393, italics added.) Thus, the authority upon which *Guerrero* rests treats prosecution and defense alike—neither is permitted to reopen the proceedings to take testimony.

We hold that because live witnesses may not be called by either side, they (like the arresting officer in *Reed*) are legally "unavailable." Being unavailable, a transcript of their former testimony given at the trial, which is a part of the record of conviction, is admissible if the other requirements of a valid hearsay exception are satisfied. Because the testimony in question satisfies both Evidence Code sections 1230 and 1291, a transcript of the questioned testimony should have been admitted.

### C. *The Court's Error Is Prejudicial*

The failure to allow that evidence is prejudicial and requires reversal. Without the prior trial testimony, appellant was deprived of his defense to

the personal use allegation. He had no incentive to present this defense at the preliminary hearing; however, had he done so, is there any doubt that to allow prior testimony at the prosecution's request and deny it on defense request would offend due process rights guaranteed by both our federal and state Constitutions? The court's ruling deprived appellant of the only defense he could present. We cannot conclude that the error was harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].)

### D. *The Crime of Discharge of a Firearm With Gross Negligence Can Be a "Serious Felony"*

▉ Finally, appellant argues that because personal use of a firearm is an element of the offense of negligent discharge of a firearm, it cannot support both the underlying felony and the enhancement. Settled California law is to the contrary: "In the section 667 context, it would be illogical to exclude a person who personally used a deadly weapon from [section 1192.7,] subdivision (c)(23)'s serious felony category simply because his use of the weapon happens also to be an element of the offense of which he is convicted." (*People* v. *Equarte* (1986) 42 Cal.3d 456, 464 [229 Cal.Rptr. 116, 722 P.2d 890].)

### III. DISPOSITION

The judgments of conviction of the underlying offenses and the truth of the two charged prior convictions are affirmed. The judgment finding the prior conviction for willful discharge of a firearm with gross negligence (§ 246.3) a "serious felony" within the meaning of sections 667 and 1192.7, subdivision (c)(8) is reversed. Because we hold that a transcript of the prior testimony of the percipient witness given under oath at trial was available and should have been admitted, we need not consider whether a summary of that testimony in the probation report satisfied the *Reed* exceptions and should also have been admitted.

Poché, J., and Reardon, J., concurred.