Ambrose **GILL**, Petitioner–Appellant,

v.

Robert J. **AYERS**, Warden; Attorney General of the State of California, Respondents–Appellees.

No. 01–55808.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 12, 2002.

Filed Aug. 28, 2003.

Ralph H. Goldsen, Goleta, CA, for the petitioner-appellant.

Teresa Torreblanca, Deputy Attorney General, San Diego, CA, for the respondents-appellees.

Before THOMPSON and RAWLINSON, Circuit Judges and WILLIAM W SCHWARZER,* Senior District Judge.

Opinion by Judge DAVID R. THOMPSON; Dissent by Judge RAWLINSON.

## ORDER

In response to the State's petition for rehearing, the opinion filed March 6, 2003, No. 01–55808, appearing at 322 F.3d 678, together with Judge Rawlinson's dissent, is **WITHDRAWN.** That opinion may not be cited as precedent by or to this court or any district court of the Ninth Circuit. A new opinion with Judge Rawlinson's dissent is filed herewith.

The parties may file further petitions for rehearing and for rehearing en banc.

## OPINION

DAVID R. THOMPSON, Circuit Judge:

### I

California state prisoner Ambrose Gill appeals the district court's denial of his petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. Gill, serving a sentence of 55 years to life under California's "Three Strikes Law," contends that he was denied due process of law at his Three Strikes sentencing hearing.

In 1976, Gill was convicted of one count of assault with a deadly weapon and three counts of assault by means of force likely to produce great bodily injury, all in violation of California Penal Code section 245(a)(collectively, the "1976 conviction").

Under California's Three Strikes scheme, the 1976 conviction could only count as a "strike" upon a finding that Gill had *personally* used a dangerous or deadly weapon during the assault. *See* Cal.Penal Code §§ 667(d) and (e), 1192.7(c)(23). At Gill's Three Strikes sentencing hearing, the court considered documentation from the record of the 1976 conviction, including Gill's own statements as paraphrased in a probation department report. The court, however, refused to allow Gill to testify to explain the statements attributed to him. We conclude that the decision refusing to allow Gill to testify violated his Fourteenth Amendment right to due process, was an unreasonable application of clearly established federal law as determined by the Supreme Court, and was not harmless. Accordingly, we reverse the district court's denial of Gill's habeas petition.

### II

The prior "strike" Gill challenges in this appeal is his 1976 conviction of four counts of violating California Penal Code section 245(a) (currently section 245(a)(1), assault with a deadly weapon or by force likely to produce great bodily injury).

Not all section 245(a)(1) violations constitute strikes under California law.[1] In California, "strikes" include "violent felonies" defined in section 667.5(c) and "serious felonies" defined in section 1192.7(c). Section 245(a)(1) is not explicitly listed in either section. Instead, to qualify a section 245(a)(1) conviction as a strike, the prosecution must establish that the defendant "personally inflict[ed] great bodily injury on any person, other than an accomplice, or ... personally use[d] a firearm"

---

* The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

1. Unless otherwise specified, all references to code sections in this opinion are references to sections of the California Penal Code in effect at the time of Gill's 1997 Three Strikes sentencing hearing.

under section 1192.7(c)(8) or that he "personally use[d] a dangerous or deadly weapon" under section 1192.7(c)(23):

> One may thus violate section 245(a)(1) in two ways that would not qualify as "serious" felonies under section 1192.7, Subdivision (c): First, one may aid and abet the assault without *personally* inflicting great bodily harm or using a firearm. Second, one may commit the assault with force "likely" to cause great bodily injury without, however, *actually* causing great bodily injury or using a deadly weapon. Accordingly, the least adjudicated elements of the crime defined in section 245(a)(1) are insufficient to establish a "serious" felony.

*People v. Rodriguez*, 17 Cal.4th 253, 261, 949 P.2d 31, 36, 70 Cal.Rptr.2d 334, 340 (1998) (citing *People v. Equarte*, 42 Cal.3d 456, 465, 722 P.2d 890, 895–96, 229 Cal. Rptr. 116, 121–22 (1986)), *superseded by statute, but not retroactive to affect foregoing quotation, as stated in People v. James*, 91 Cal.App.4th 1147, 1149, 111 Cal. Rptr.2d 292, 293–94 (2001).

At Gill's Three Strikes sentencing hearing, the prosecutor offered documentation from Gill's 1976 section 245(a)(1) conviction to prove that the conviction qualified as a "strike." The documentation disclosed that the offense arose from an incident that occurred at a Colton, California party. A group of youths from Colton became involved in a physical altercation with a group of youths from Fontana, California. Gill was aligned with the Fontana group. Four or five persons from the Colton group were injured by someone from the Fontana group wielding a baseball bat. Gill and another man were charged with those assaults. Gill was convicted of one count of assault with a deadly weapon and three counts of assault by means of force likely to produce great bodily injury, all in violation of section 245(a)(1).

 In finding that Gill violated section 245(a)(1), the jury could have found that he used a deadly weapon, that he employed force likely to produce great bodily injury, *or* that he aided someone else who committed such acts. We cannot tell from the jury's verdict what particular facts it found. We do know, however, that the jury did not determine by its verdict that Gill personally used any weapon. Therefore, to qualify the 1976 section 245(a)(1) conviction as a strike under section 1192.7(c)(23), the State had to prove the additional fact that Gill had personally used the baseball bat as a deadly weapon.[2]

To prove that fact, the State offered: (1) the information charging Gill with one count of assault with a deadly weapon with intent to commit murder and four counts of assault by means of force likely to produce great bodily injury; (2) the jury verdicts finding Gill guilty of one count of assault with a deadly weapon (a lesser included offense of the crime of assault with a deadly weapon with intent to commit murder) and three counts of assault by means of force likely to produce great bodily injury; (3) a minute order reflecting the jury's verdicts; (4) a minute order from the 1976 sentencing hearing; and (5) an excerpt from the 1976 probation department report. This documentation, the court ruled, constituted part of the original record. Consistent with California case law, the trial judge admitted the statements attributable to Gill from the probation report, but excluded, on hearsay grounds, other sections of that report. The court denied Gill's request to testify to

---

**2.** Whether a baseball bat is a deadly weapon under California law depends on the manner in which it is used. *People v. McCullin,* 19 Cal.App.3d 795, 801, 97 Cal.Rptr. 107, 111 (1971).

explain his reasons for making the statements and to assert that he did not personally use the baseball bat as a deadly weapon.

In making this ruling, the court recognized California Supreme Court and appellate court decisions which clearly held that, in proving the substance of a prior conviction, the prosecution is limited to the record of conviction. Those cases, however, as the sentencing court acknowledged, left open the question whether a defendant is similarly restricted.[3] *See, e.g., People v. Reed,* 13 Cal.4th 217, 229, 914 P.2d 184, 192, 52 Cal.Rptr.2d 106, 114 (1996) ("We express no opinion as to whether a defendant would be entitled to call live witnesses to dispute [the] circumstances of the prior offense . . . ."); *People v. Guerrero,* 44 Cal.3d 343, 356 n. 1, 748 P.2d 1150, 1157, 243 Cal.Rptr. 688, 696 (1988) (concluding that a trial court may look to the entire record of conviction in determining the truth of prior-conviction allegations, but declining to address "whether on the peculiar facts of an individual case the application of the rule set forth herein might violate the constitutional rights of a criminal defendant").

In precluding Gill from testifying, the sentencing court reasoned that if he were to testify, an element of surprise would be injected into the proceeding, and the State would have difficulty presenting rebuttal evidence in view of the passage of time between the 1976 conviction and the 1999 Three Strikes sentencing hearing. Counting the 1976 conviction as a "strike" and

applying the Three Strikes Law, the court sentenced Gill to 80 years to life in prison.[4]

Gill appealed his Three Strikes sentence, arguing, *inter alia,* that the sentencing court had erred in refusing to allow him to testify. The California Court of Appeal for the Fourth Appellate District rejected this argument. The court reasoned that:

'The least adjudicated elements of the prior conviction remain the same whether it is questioned in the trial court at the time of the determination of habitual criminality or on habeas corpus after such determination has become final. *Neither the People nor the defendant can go behind those adjudicated elements in an attempt to show that he committed a greater, lesser, or different offense.'* [*In re Finley,* 68 Cal.2d 389, 393, 438 P.2d 381, 384, 66 Cal.Rptr. 733, 736 (1968)]. Thus, the authority upon which *Guerrero* rests treats prosecution and defense alike—neither is permitted to reopen the proceedings to take testimony.

*People v. Gill,* Consolidated Case Nos. G022286, G022287, G022288, slip op. at 10–11 (Cal.Ct.App. March 9, 1999) (quoting *People v. Bartow,* 46 Cal.App.4th 1573, 1582, 54 Cal.Rptr.2d 482, 487 (1996)) (emphasis in original). The court also noted that Gill had the same opportunity as the State to submit any documents from the record of the conviction, and concluded that Gill had "demonstrated no error, constitutional or otherwise." *Id.* at 11.

---

**3.** The court stated, "Apparently [*People v.*] *Guerrero* [44 Cal.3d 343, 748 P.2d 1150, 243 Cal.Rptr. 688 (1988)] didn't resolve that issue either, so now we have two appellate courts and the Supreme Court saying, 'We're not going to decide whether or not the defendant can testify.' Flip a coin as to which side wants to appeal? Draw straws?"

**4.** The trial court originally sentenced Gill to three consecutive terms of 25 years to life and an additional term of five years and four months. Because the state appellate court reversed the conviction underlying one of the 25 years to life terms, Gill is currently serving 55 years to life.

Gill timely filed a petition for review in the California Supreme Court. That court denied review.

Gill then filed the present habeas corpus petition in the United States District Court. The district court denied the petition, holding that the state court decision was not an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. We granted a certificate of appealability limited to "whether the state court's refusal to allow [Gill] to testify at a sentencing hearing regarding the nature of a prior conviction involved an unreasonable application of clearly established federal law as determined by the Supreme Court."

### III

We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. We review *de novo* a district court's decision to grant or deny a state prisoner's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. *Benn v. Lambert*, 283 F.3d 1040, 1051 (9th Cir.2002) (citing *Miles v. Prunty*, 187 F.3d 1104, 1105 (9th Cir.1999)), *cert. denied*, 537 U.S. 942, 123 S.Ct. 341, 154 L.Ed.2d 249 (2002).

■ We review Gill's petition under the provisions of the Anti–Terrorism and Effective Death Penalty Act ("AEDPA") because Gill filed his petition after April 24, 1996, AEDPA's effective date. *Lindh v. Murphy*, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Patterson v. Stewart*, 251 F.3d 1243, 1245 (9th Cir.2001). Under the AEDPA, Gill is not eligible for federal habeas relief unless the decision of the California Court of Appeal, the last ·

reasoned decision from the state court system,[5] was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1) (2000). As the Supreme Court has recently explained,

> [u]nder the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J.).

### IV

■ Gill contends that had he been able to testify at his Three Strikes hearing, his testimony would have explained the statements attributed to him in the probation department report and would have established that he did not personally use a deadly weapon. He argues that the sentencing court's failure to allow him to testify violated his Fourteenth Amendment due process right to present a defense, and was an objectively unreasonable application of federal law as clearly established by

5. Because the California Supreme Court denied review of Gill's habeas petition without comment, "we 'look through' the unexplained California Supreme Court decision[ ] to the last reasoned decision, the state appellate court's decision, as the basis for the state court's judgment." *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n. 2 (9th Cir.2000) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803–04, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)), *cert. denied*, 534 U.S. 944, 122 S.Ct. 324, 151 L.Ed.2d 242 (2001).

decisions of the Supreme Court. We agree.

A long line of Supreme Court precedent compels this conclusion. Beginning with *Cooke v. United States,* 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925), the Court held that, in a criminal contempt proceeding for an act that occurred outside open court, a court must afford "the opportunity of the accused to present his defense by witnesses and argument." *Id.* at 536, 45 S.Ct. 390. Later, in *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), citing to *Cooke,* the Court held that denial of the right to be heard by counsel was a "denial of a hearing, and, therefore, of due process in the constitutional sense." *Powell,* 287 U.S. at 69, 53 S.Ct. 55.

The Court subsequently applied these elements of due process to defendants in recidivist proceedings. In *Chandler v. Fretag,* 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954), the Court, relying in part on *Powell,* held that it was a denial of due process guaranteed by the Fourteenth Amendment to deny a defendant an opportunity to obtain counsel to defend against a recidivist charge. *Id.* at 10, 75 S.Ct. 1. *See also Chewning v. Cunningham,* 368 U.S. 443, 447, 82 S.Ct. 498, 7 L.Ed.2d 442 (1962) (holding that, because "a trial on a charge of being a habitual criminal is such a serious one (*Chandler v. Fretag,* 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4), the issues presented under Virginia's statute so complex, and the potential prejudice resulting from the absence of counsel so great," counsel must be supplied to a defendant charged with habitual criminality). In *Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962), the Court, citing *Chewning, Chandler* and *Reynolds v. Cochran,* 365 U.S. 525, 81 S.Ct. 723, 5 L.Ed.2d 754 (1961), stated that "[a]lthough these cases were specifically concerned with the right to

assistance of counsel, it would have been an idle accomplishment to say that due process requires counsel but not the right to reasonable notice and[an] opportunity to be heard." *Id.* at 452, 82 S.Ct. 501. The Court held that implicit in its earlier decisions was a requirement that a defendant "receive reasonable notice and an opportunity to be heard relative to [a] recidivist charge...." *Id.* There can be no doubt that Supreme Court precedent has clearly established that due process, including the right to be heard, applies to recidivist proceedings.

In 1967, the Supreme Court applied these due process guarantees in the context of a sentencing proceeding in which the petitioner received a sentence beyond the statutory maximum for the crime he committed. *Specht v. Patterson,* 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967). In *Specht,* instead of being sentenced for the "indecent liberties" of which he was convicted, Specht was sentenced under Colorado's Sex Offenders Act, which authorized a sentence of one day to life "if the trial court 'is of the opinion that any ... person [convicted of specified sex offenses], if at large, constitutes a threat of bodily harm to members of the public, or is an habitual offender and mentally ill.'" *Id.* at 607, 87 S.Ct. 1209 (quoting Colo.Rev. Stat. Ann. § 39–19–1 (1963)) (alterations in *Specht* ). The Court compared sentencing hearings under Colorado's Sex Offenders Act to sentencing hearings "under recidivist statutes" which present "a distinct issue," and held that in a sentencing hearing under Colorado's Sex Offenders Act, a defendant is entitled to the full panoply of due process guarantees of the Fourteenth Amendment including the right to be present with counsel, to have the opportunity to be heard, to confront and cross-examine adverse witnesses, and to offer evidence of

his own. *Id.* at 610, 87 S.Ct. 1209.[6]

■ California's Three Strikes Law, like Colorado's Sex Offenders Act, authorizes sentences beyond the statutory maximum for the current offense, upon proof of additional facts. In the California scheme, the prosecution must prove either the fact of a prior conviction, or, as here, facts pertaining to that prior conviction. The State contends that *Specht* is distinguishable because Specht's sentence was based on facts other than a prior conviction, whereas Gill's sentence is based on his 1976 conviction. That argument fails. While it is true that Gill's Three Strikes sentence is based on his 1976 conviction, that conviction will not support his sentence without proof of the additional fact of personal use of a deadly weapon. As in *Specht*, that determination presents a distinct issue.[7]

The State argues that because Gill was given the opportunity to present documentary evidence, and denied only the opportunity to testify, he was afforded a sufficient opportunity to be heard and there was no Fourteenth Amendment violation. This argument misses the mark. The Supreme Court has held that the right to be heard includes the right to testify. *Rock v. Arkansas*, 483 U.S. 44, 49, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). In *Rock*, the Court invalidated on due process grounds Arkansas' complete prohibition against hypnotically refreshed testimony, asserting "it cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." *Id.* The opportunity to testify, the Court wrote, is "a necessary corollary to the Fifth Amendment's guarantee against compelled testimony." *Id.* at 52. It is a "right [that] reaches beyond the criminal trial: the procedural due process constitutionally required in some extrajudicial proceedings includes the right of the affected person to testify" at probation and parole revocation proceedings and even at hearings on the termination of welfare benefits. *Id.* at 51 n. 9, 107 S.Ct. 2704 (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Goldberg v. Kelly*, 397 U.S. 254, 269, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)).

■ Although the Court has recognized that a defendant's right to testify may be restricted, "restrictions of a defendant's right to testify may not be arbitrary or disproportionate to the purposes they are designed to serve. In applying its evidentiary rules a State must evaluate whether

---

**6.** It is noteworthy that the California Supreme Court in *People v. Reed* (in which that court declined to address whether the defendant had a right to call witnesses to dispute the circumstances of a prior conviction), cited to *Specht* in dismissing the prosecution's contention that a defendant has no constitutional right to confront witnesses in a sentence enhancement proceeding: "The United States Supreme Court has held that 'under recidivist statutes where an habitual criminal issue is "a distinct issue" [citation] . . . [d]ue process . . . requires [the defendant] be present with counsel, have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own.' " *Reed*, 13 Cal.4th at 228 n. 6, 52 Cal.Rptr.2d 106, 914 P.2d 184 (quoting

*Specht*, 386 U.S. at 610, 87 S.Ct. 1209) (alterations in *Reed*).

**7.** Gill has no right to relitigate the fact of the 1976 assault conviction. *See Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394, 402–04, 121 S.Ct. 1567, 149 L.Ed.2d 608 (2001). Gill, however, does not attack his 1976 conviction. The 1976 conviction for violation of California Penal Code section 245(a)(1) embraced the *possibility* that Gill used a deadly weapon, but did not require proof that he *personally* used such a weapon. The charge that Gill personally used a deadly weapon introduced a new factual issue at the Three Strikes hearing.

the interests served by a rule justify the limitation imposed on the defendant's constitutional right to testify." *Id.* at 55–56, 107 S.Ct. 2704. The Arkansas evidentiary rule invalidated in *Rock* did not allow trial courts any discretion to admit post-hypnotic testimony. *See also Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (holding that due process requires that rules limiting the right of the accused to present his own defense may not be applied "mechanistically"). Here, California's Three Strikes procedure, as interpreted by the California sentencing court and by the intermediary appellate court, similarly subjected Gill to an arbitrary process that denied him any right to go beyond the record of conviction and testify.

The sentencing court gave two reasons for its decision precluding Gill from testifying. It cited "surprise" and the prosecution's difficulty in presenting rebuttal evidence because of the lapse of time between the 1976 conviction and the 1999 Three Strikes hearing. The appellate court, in its decision, relied primarily on the reliability of the probation department report and Gill's opportunity to present evidence other than his testimony. These reasons, however, lack substance given the *Rock* Court's assertion that "the most important witness for the defense in many criminal cases is the defendant himself. There is no justification today for a rule that denies an accused the opportunity to offer his own testimony." *Rock,* 483 U.S. at 52, 107 S.Ct. 2704. We conclude that the state court's decision denying Gill the right to testify violated his Fourteenth Amendment right to due process. We next consider whether this constitutional error was an objectively unreasonable application of clearly established federal law as determined by the Supreme Court.

In determining whether a constitutional error is objectively unreasonable, we consider whether the case presents a "close question." *See Ortiz–Sandoval v. Clarke,* 323 F.3d 1165, 1172 (9th Cir.2003); *Francis S. v. Stone,* 221 F.3d 100, 113 (2d Cir.2000). It is logical to conclude that if a case presents an issue close enough for reasonable minds to differ, then a state court's decision resolving that issue, even if incorrect, would not be objectively unreasonable. *See id.* Thus, one measure of the reasonableness of a state court's erroneous decision would be the degree of the error. The Second Circuit in *Francis S.* suggested this approach, commenting that the degree of error "need not be great; otherwise, habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" *Francis S.,* 221 F.3d at 111 (citation omitted); *see also Ortiz–Sandoval,* 323 F.3d at 1172 (9th Cir.) ("Were this [state habeas] case presented on direct appeal, a close question would be before us.... Under the circumstances [i.e. a "close question" case], we cannot say that the state court's decision was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court."). In the present case, the unreasonableness of the state court's error is demonstrated not only by the degree of the error but by the reasons given for the erroneous decision.

The Supreme Court has long recognized that the right to testify in one's own behalf extends beyond the criminal trial. *See Scarpelli,* 411 U.S. at 782, 93 S.Ct. 1756; *Morrissey,* 408 U.S. at 489, 92 S.Ct. 2593; *Kelly,* 397 U.S. at 268–69, 90 S.Ct. 1011. To deny a criminal defendant this constitutional right to testify, which arises from the Fifth, Sixth, and Four-

teenth Amendments (*see Rock,* 483 U.S. at 51–52, 107 S.Ct. 2704), the State must show overriding case-specific reasons. *Maryland v. Craig,* 497 U.S. 836, 850, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990); *Rock,* 483 U.S. at 56, 107 S.Ct. 2704; *Chambers,* 410 U.S. at 302, 93 S.Ct. 1038. No such reasons were shown here.

Moreover, the reasons given for the erroneous decision demonstrate its unreasonableness. The concern that Gill's request caused "surprise" could have been met by a reasonable continuance. The concern that the lapse of time made it more difficult for the State to present evidence to rebut Gill's anticipated testimony could not emasculate Gill's constitutional right. The assumption that the probation report accurately recounted Gill's conduct because the trial judge would have said something if it did not, and the assumption that the report must have been accurate because Gill's counsel did not challenge it, did not take into account the fact that back in 1976 in California it didn't make any difference in the sentence Gill would receive whether he personally used the bat as a deadly weapon or not. The assumptions provide support for the argument that Gill's proposed testimony should not be believed, but they do not provide support for the denial of his opportunity to present that testimony. *Cf. Greene v. Lambert,* 288 F.3d 1081, 1092 (9th Cir. 2002) (holding that it was an unreasonable application of clearly established federal law, including *Rock,* to uphold the state trial court's broad prohibition against all evidence relating to the defendant's psychiatric diagnosis when such exclusion applied to relevant testimony by the defendant and his victim).

We conclude that the state court's denial of Gill's constitutional right to testify in his own behalf at his Three Strikes sentencing hearing violated his right to due process under the Fourteenth Amendment, and was an objectively unreasonable application of clearly established federal law as determined by the Supreme Court. Gill is entitled to habeas corpus relief unless the state court's erroneous decision was harmless. *See Shackleford,* 234 F.3d at 1077–79.

V

A trial-type error of constitutional dimension is harmless unless it had a "substantial and injurious effect or influence in determining the [fact finder's] verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). "The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." *Kotteakos,* 328 U.S. at 765, 66 S.Ct. 1239.

In *Crane v. Kentucky,* the Court held that a harmless error analysis should be applied to a case bearing striking similarities to the present case. *Crane v. Kentucky,* 476 U.S. 683, 691, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986). In *Crane,* the Court held that Kentucky's exclusion of a habeas petitioner's testimony bearing upon the circumstances of his confession violated his Fourteenth Amendment right to a fair trial, reasoning that:

> [A]n essential component of procedural fairness is an opportunity to be heard. That opportunity would be an empty one if the State were permitted to exclude competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant's claim of innocence. In the absence of any valid state justification, exclusion of

this kind of exculpatory evidence deprives a defendant of the basic right to have the prosecutor's case encounter and "survive the crucible of meaningful adversarial testing."

*Id.* at 690–91, 106 S.Ct. 2142 (citations omitted). The Court remanded the case to the state court for application of a harmless error analysis. After remand, the Sixth Circuit determined that the exclusion of the proffered testimony was not harmless due to its noncumulative nature and because it cast doubt upon the reliability of the confession, the crucial element of the prosecution's case. *Crane v. Sowders,* 889 F.2d 715, 718 (6th Cir.1989).

In the present case, the crucial evidence at Gill's Three Strikes sentencing hearing was the language from the probation report that paraphrased Gill's statements to the probation officer to the effect that during the altercation he personally hit persons from the rival faction with a baseball bat. Gill asserts that he made those statements in an attempt to appear conciliatory and contrite at a time when an admission of personal weapon use had no effect on the sentence he would receive. He contends that had he been able to testify, he could have explained this and could have established that he did not personally use the baseball bat as a deadly weapon.

We do not know whether the sentencing court would have believed Gill's testimony, but if it had, that testimony would have refuted the allegation of personal weapon use. Gill was entitled to have the sentencing court hear that testimony.

In *Crane,* the excluded testimony was central to the defendant's defense. *Crane v. Sowders,* 889 F.2d at 718 (citing *Crane v. Kentucky,* 476 U.S. at 690, 106 S.Ct. 2142). Here, Gill's testimony was not only central to his defense, it was his only defense. The denial of the right to present that testimony deprived Gill of his constitutional right to present a defense. That error had a "substantial and injurious effect or influence in determining the [fact finder's] verdict." *Brecht,* 507 U.S. at 637, 113 S.Ct. 1710 (quoting *Kotteakos,* 328 U.S. at 776, 66 S.Ct. 1239). The error was not harmless.

## VI

We reverse and remand this case to the district court with instructions to issue the writ of habeas corpus relieving Gill of the state court's sentence imposed under California's Three Strikes Law in reliance on his 1976 conviction of violating California Penal Code section 245(a)(1), unless Gill is afforded within a reasonable period of time the opportunity to testify at a new Three Strikes sentencing hearing on the issue of personal use of a deadly weapon in the commission of the 1976 offenses.

REVERSED and REMANDED.

RAWLINSON, Circuit Judge, dissenting:

I respectfully dissent.

As we recently acknowledged, federal habeas relief should not be granted lightly. Rather, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "imposes a highly deferential standard for evaluating state-court rulings[;] demands that state court decisions be given the benefit of the doubt"[;] and mandates "our full respect" for rulings of our "co-equal judiciary." *Clark v. Murphy,* 317 F.3d 1038, 1043 (9th Cir.2003) (citations and internal quotation marks omitted).

With those cautions in mind, I proceed to the first inquiry accompanying habeas review: "whether the state court erred at all." *Id.* at 1044 (citation omitted). If the state court committed no error, our habeas inquiry ends. *See id.*

Petitioner Ambrose Gill ("Gill") was convicted in 1976 of one count of assault with a deadly weapon and three counts of assault by means of force likely to produce great bodily injury. During an interview with a probation officer, Gill admitted that he personally wielded a baseball bat during a Saturday-night fracas. Fast forward to 1997, with Gill facing a possible life sentence under California's "Three Strikes Law." Twenty-one years after the fact, at his "Three Strikes" sentencing hearing, Gill sought to challenge the statements attributed to him in the probation department report. The state trial court denied Gill's request to refute the prior statement by testifying to the contrary at his "Three Strikes" sentencing hearing.

The trial court denied Gill's request in part because the court recognized that passage of time had lessened the likelihood of obtaining countervailing eyewitness testimony regarding the extent of Gill's personal involvement in administering the assaultive blows. The trial court also considered the existence of binding state precedent limiting the prosecution to the record of conviction when establishing the existence of a prior conviction.

The California Court of Appeal confirmed the trial court's ruling. Citing *People v. Bartow*, 46 Cal.App.4th 1573, 1581, 54 Cal.Rptr.2d 482 (1996), the Court of Appeal declared that "neither the prosecution nor the defense may call live witnesses." *People v. Gill*, Consolidated Case Nos. G022286, G022287, G022288, slip op. at 10 (Cal.Ct.App. March 9, 1999). The Court of Appeal noted that "a defendant's statements in a post-conviction probation report do reliably reflect the conduct of which a defendant was convicted. The judge would surely note any deviation in the description of the crime from the evidence adduced at trial." *Id.* at 12.

Finally, in disposing of Gill's due process claim, the California Court of Appeal observed that "[t]he reliability of the [probation] report is further ensured by the fact that defendant had the opportunity to challenge the accuracy of the report, at sentencing and to correct any misstatements. Thus, while there may be a case where due process will demand that a court hear the defendant concerning a prior conviction, this is not it." *Id.* at 13(citation and internal quotation marks omitted).

The majority assigns error to the California Court of Appeal's ruling, relying on the United States Supreme Court's opinion in *Rock v. Arkansas*, 483 U.S. 44, 55–56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). However, the majority gives short shrift to the Supreme Court's recognition that "*[o]f course*, the right to present relevant testimony is not without limitation [and] may, *in appropriate cases*, bow to accommodate other legitimate interests in the criminal trial process." *Id.* at 55, 107 S.Ct. 2704. (emphasis added) (citation and internal quotation marks omitted). The Supreme Court's matter-of-fact acknowledgment of the need to accommodate other procedural priorities calls into question the majority's facile application of *Rock* to the facts of this case. For the Supreme Court expressly cautioned that the exercise of the defendant's right must be consistent with "both fairness and reliability." *Id.* at 56, n. 11, 107 S.Ct. 2704.

Is fairness fostered if the defendant presents testimony at the Three Strikes Hearing when the State may not? Do twenty-year-old recollections serve the interests of reliability? The California Court of Appeal answered these questions in the negative, and committed no error in doing so. In accordance with the dictates of *Rock*, the California Court of Appeal restricted defendant's right to testify after considering the parallel interests of fair-

ness and reliability. The California Court of Appeal ruled that on the facts of this case, defendant's right to testify did not outweigh the other interests properly considered by the court. The district court gave appropriate deference and respect to the state court's decision. I would do the same.