**UNITED STATES of America**

v.

**Leon CARMICHAEL, Sr.**

**Cr. Action No. 2:03cr259–MHT.**

United States District Court,
M.D. Alabama,
Northern Division.

Jan. 11, 2007.

Order Unsealing Order Apr. 2, 2007.

Carmen D. Hernandez, Washington, DC, James Kenneth Jenkins, Maloy & Jenkins, Atlanta, GA, Lisa Monet Wayne, Denver, CO, Ronald Ray Brunson, McCord and Brunson, Birmingham, AL, Susan Graham James, Susan G. James & Associates, Montgomery, AL, for Leon Carmichael, Sr.

A. Clark Morris, Matthew S. Miner, Christopher A. Snyder, John T. Harmon, Terry F. Moorer, Stephen P. Feaga, U.S. Attorney's Office, Andrew O. Schiff, United States Attorney's Office, Middle District of Alabama, Montgomery, AL, for United States of America.

## EX PARTE OPINION AND ORDER

MYRON H. THOMPSON, District Judge.

The court has before it defendant Leon Carmichael, Sr.'s ex parte motion seeking this court's assistance and intervention regarding defense investigation in preparation for sentencing. For the reasons that follow, the court will deny the relief Carmichael seeks.

### I.

On December 20, 2006, Carmichael filed an ex parte motion seeking an ex parte meeting with this court "regarding a defense theory for sentencing purposes." The court, reluctant to grant a request for an ex parte meeting without more information as to its purpose, ordered Carmichael to state with greater specificity the nature of the proposed ex parte meeting and why it must take place outside the presence of opposing counsel. In his response, Carmichael stated that the government intended to call several "jailhouse informants" as witnesses at his sentencing hearing to testify that Carmichael made threats against his lawyers. The falsity of such allegations, Carmichael argued, could be proved in a somewhat elaborate sting operation in which covert electronic surveillance would capture the jailhouse witnesses working together to fabricate their testimony. Since the witnesses are currently incarcerated as federal detainees at Autauga County Jail, Carmichael would ask this court to order the Autauga County Sheriff to cooperate with his plan to set up secret monitoring equipment in the jail and put the witnesses in a room together where their conversation could be recorded.

This court granted the motion for an ex parte meeting and ordered an on-the-record, ex parte hearing for December 29, 2006, to discuss Carmichael's proposal. Before the hearing, the court ordered the government to file notice if it intended for the court to consider Carmichael's alleged threats at sentencing. The government

replied that it would not ask the court to consider the alleged threats. The court then contacted defense counsel to inquire whether the ex parte hearing was still necessary. Defense counsel orally replied that even if the government would not be calling the jailhouse witnesses to testify about the alleged threats, the government might still call them to testify about other matters, including allegations that Carmichael had sexual relations with underage girls. Carmichael still wanted the opportunity to set up secret surveillance of the jailhouse witnesses, this time to capture a conversation revealing that they were fabricating allegations about Carmichael's sexual activities. The court once again contacted the government and, without discussing Carmichael's ex parte motion, made oral inquiry of the government's plans regarding jailhouse witnesses. Counsel for the United States represented that she might call jailhouse witnesses to testify to matters unrelated to Carmichael's alleged threats, but she was unable to state comprehensively what those matters might be. Consequently, the ex parte hearing took place as scheduled.

At the hearing defense counsel explained in greater detail what Carmichael proposed to do and why he wanted to do it. According to Carmichael, three jailhouse informants—Marcus Smith, Kendall Watson, and Patrick Humphrey—might testify at sentencing to statements that Carmichael had made to them admitting that he had a sexual relationship with an underage girl. Carmichael believes that these three informants, who are all in the Autauga County Jail together, have joined together to fabricate their testimony, believing that if their testimony is consistent then it will be credible, and if it is credible then they will be favorably treated by the United States in their pending federal cases.

Carmichael is convinced that if these three inmates are put together in a holding cell and told that they are being transported to court for a hearing in the Carmichael case, they will use the time they have alone together in the holding cell to formulate their testimony and make sure it is consistent. Such a conversation, if secretly monitored, would reveal that the inmates' testimony is not credible and should not be accepted by this court at the sentencing hearing.

To that end, Carmichael proposes that the court issue an ex parte order (not to be disclosed to the United States) directing the Sheriff of Autauga County to permit defense investigators to enter the Autauga County Jail and wire a holding cell or other room within the jail with secret audio and visual monitoring equipment. The order would further require the Sheriff to have jail officials remove Smith, Watson, and Humphrey from their individual cells, bring them to the wired holding cell, and misinform them that they are about to be transported to court for a hearing in the Carmichael case. The jail officials would then leave the three inmates alone in the holding cell for several hours, during which time defense investigators would monitor their conversation. Later that day, the inmates would be returned to their individual cells, and defense investigators would remove the electronic equipment from the holding cell. Defense counsel assures the court that the entire operation would take less than a day, would involve minimal disruption to the operation of the jail, and would be privately financed.

## II.

Three inquiries occupy the court's consideration of Carmichael's request. First,

does the court even have the authority to grant the relief Carmichael seeks? Second, does Carmichael have a constitutional right to such relief—that is, is the court obligated to grant it? And third, to the extent such relief is authorized but discretionary, is it warranted by the particular circumstances of this case?

## A.

The court's initial concern with Carmichael's proposal is whether the court even has the authority to grant the relief Carmichael seeks. At the ex parte hearing, the court asked defense counsel to file a brief indicating, *inter alia*, the source of the court's authority to issue such an order.

Carmichael filed a brief as ordered, wherein he argued that this court has jurisdiction over the Autauga County Jail by virtue of the facts that Smith, Watson, and Humphrey are federal detainees, the court has jurisdiction over federal detainees, and the U.S. Marshal Service has a contract with the Autauga County Sheriff to house federal prisoners. Carmichael also points to the federal sentencing statute, which provides that the sentencing court "may in its discretion employ any additional procedures that it concludes will not unduly complicate or prolong the sentencing process." 18 U.S.C. § 3553(d). Thus, according to Carmichael, federal law gives this court "wide latitude in fashioning procedures to be used in determining an appropriate sentence." Def. Br. (doc. no. 817) at 11.

The court doubts that Congress intended for "additional procedures" under § 3553(d) to include court-ordered surveillance operations. However, this court ultimately need not decide whether it has the authority, pursuant to § 3553 or any other source, to grant the relief Carmichael seeks, because, as explained below, such relief would be discretionary and the circumstances of this case do not warrant it.

## B.

■ In addition to arguing that the court has *authority* to grant Carmichael the relief he seeks, the defense argues that this court is actually *obligated* to do so. *Id.* at 10. Although Carmichael does not provide extensive support for such a claim, the court acknowledges that there are some Sixth Amendment interests involved. Carmichael has a right to present a defense, *Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988), which applies, to some extent, to the sentencing phase of his case, *Gill v. Ayers*, 342 F.3d 911, 917–21 (9th Cir.2003); *see also* 3 *Criminal Practice Manual* § 104:6 (2006). The right to present a defense includes investigation and access to witnesses. *Gregory v. United States*, 369 F.2d 185 (D.C.Cir.1966); *United States v. Germany*, 32 F.R.D. 421 (M.D.Ala.1963) (Johnson, J.). Non-party witnesses belong neither to the government nor the defense, meaning that the government cannot block access to witnesses that happen to be incarcerated.

■ On the other hand, several considerations weigh against Carmichael's claim that he has an absolute right to conduct the operation he proposes. Although the defense has a right of access to witnesses, such access is normally conditioned upon the consent of the witness. *State v. Lerner*, 112 R.I. 62, 308 A.2d 324, 335 (1973). There is also a decidedly fundamental and qualitative difference between "access" to witnesses and more manipulative techniques such as eavesdropping and other

covert operations. Admittedly, both law enforcement officials and private defense investigators occasionally resort to such activities; and where a witness is incarcerated, there is an imbalance of power between the government's and the defendant's respective abilities to set up secret surveillance rooms of the kind contemplated by Carmichael. Nevertheless, this court is not aware of any recognized absolute right to court-enforced parity between the defendant and the government when it comes to investigative resources and tools. Accordingly, the court concludes that it is under no absolute obligation, pursuant to the Sixth Amendment or any other provision of federal or constitutional law, to grant Carmichael the relief he seeks.

### C.

Because Carmichael has no absolute right to the relief he seeks, then assuming *arguendo* that this court has the authority to grant it, such relief is discretionary. The final question, then, is whether the court should exercise its discretion—assuming it has the authority to do so—in the context of this particular case.

■ For several reasons, the court concludes that it would be inappropriate, under the present circumstances, to order the relief Carmichael seeks. In reaching this conclusion, the court believes it is best to consider whether the remedy Carmichael seeks is proportional to the benefit it would provide to his case. To that end, the court considers the significance of these witnesses' testimony in the context of the overall case and their probable impact on Carmichael's sentence, the likelihood that Carmichael's proposed operation would yield useful impeachment evidence, other sources of impeachment material available to Carmichael, the disruption

such an operation would cause for the jail, and the public interest in maintaining a separation between the judiciary and investigations, especially those involving unsavory or deceptive techniques.

First, the possible impact of Smith's, Watson's, and Humphrey's testimony is relatively minor. This is the sentencing phase, so Carmichael's innocence of the crimes with which he was charged is not in question. The issue here is collateral: whether, and to what extent, the court should consider Carmichael's conduct with underage girls when determining his sentence. Such evidence, if admitted, does not even implicate the court's offense level determination under the U.S. Sentencing Guidelines; rather, it would be offered for the court's determination of a sentence within the Guideline range or under the reasonableness provision of 18 U.S.C. § 3553. Of course, it is also possible that the jailhouse witnesses might never testify to Carmichael's alleged sexual relations at all.

Second, even if they do plan to testify, the likelihood that Carmichael's proposed operation will yield valuable impeachment material is, at best, uncertain. The court is reluctant to assist the defense in a fishing expedition for any and all minimally useful impeachment material that could potentially be derived from eavesdropping on the witnesses' conversations.

In connection with these considerations, the court notes that Carmichael has presented the court with something of a moving target when it comes to the purpose of his request. Initially Carmichael insisted that the surveillance operation he had in mind was necessary to prove that Smith, Watson, and Humphrey were making up testimony about threats he allegedly made against his attorneys. Then, when in-

formed that the government would not seek to use those allegations against him at sentencing, Carmichael argued that the surveillance operation would prove that the Smith, Watson, and Humphrey were making up testimony about his alleged sexual relations with underage girls. Carmichael thus appears to be firmly convinced that the witnesses are liars in general, more so than that they are lying about anything in particular.

Third, if Smith, Watson, and Humphrey do testify at the sentencing hearing, Carmichael has a number of opportunities for effective confrontation. Carmichael's ex parte brief alleged numerous reasons why the jailhouse witnesses' testimony would not be credible, including allegations of perjury and inconsistent statements. Def. Br. (doc. no. 817) at 2–6. Admittedly, Carmichael's purpose in providing the court with such information was to bolster his argument in support of pursuing further investigation at the jail. But these facts also support an argument against Carmichael's request, because they demonstrate that defense counsel has plenty of ammunition for cross-examining these witnesses without any secret surveillance operation.

Fourth, notwithstanding Carmichael's assurances that his proposed operation will cause minimal disruption to the workings of the county jail, there is little doubt that *some* disruption and inconvenience will result.

Lastly, the court should proceed with extreme caution before becoming involved in investigative techniques that involve deception, manipulation, and spying. The court realizes that investigators on both sides of a criminal case occasionally use techniques that involve subterfuge, misleading a witness, or other forms of manipulation, despite the ethical (and sometimes legal) norms and rules against such behavior. The court also realizes that the personal privacy expectations of prisoners is reduced, such that electronic monitoring inside a jail is less troublesome than other locales. Nonetheless, the circumstances of this case do not warrant the court exercising its discretion in advancement of a procedure, not directly related to law enforcement, that involves clandestine electronic surveillance of witnesses. Aside from the question of the court's authority, then, there is certainly a public interest in the judiciary not authorizing activity that would undermine the integrity of the court system.

In sum, assuming *arguendo* that the court has the authority to grant Carmichael the relief he seeks, its exercise of such authority would be discretionary, and the circumstances of this particular case do not warrant the exercise of such discretion here. The court recognizes that testimony by criminal informants, or "snitches," presents the legal system with significant challenges. But under the circumstances, even if this court were satisfied that it has the authority to issue the order Carmichael has requested, it would not exercise its discretion to do so in this case.

\*     \*     \*     \*     \*     \*

Accordingly, it is ORDERED as follows:

(1) The court will treat defendant Leon Carmichael, Sr.'s ex parte brief (doc. no. 817) as an ex parte motion for the court to authorize covert surveillance in the Autauga County Jail of inmates Smith, Watson, and Humphrey.

(2) Said motion is denied.

It is further ORDERED that this order is ex parte as to defendant Carmichael and that it be placed under seal.

It is further ORDERED that, unless defendant Carmichael files an objection giving a reason why this order should remain under seal, the court will make this order public the day after defendant Carmichael is sentenced.

## ORDER

By order entered on January 11, 2007 (doc. no. 828), the court (1) treated defendant Leon Carmichael, Sr.'s ex parte brief (doc. no. 817) as an ex parte motion for the court to authorize covert surveillance of certain Autauga County Jail inmates; (2) denied said motion; (3) designated its order as ex parte as to defendant Carmichael and placed it under seal; and (4) stated that, unless defendant Carmichael filed an objection giving a reason why the order should remain under seal, the court would make the order public the day after Carmichael was sentenced.

Because Carmichael has not filed an objection within one day after his sentencing, it is ORDERED that the order entered on January 11, 2007 (doc. no. 828) is unsealed.

DONE, this the 2nd day of April, 2007.